IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JON SOTO,

                              Plaintiff,

  v.                                                    OPINION and ORDER

DAVID GIBBONS and KEVIN ELY,                          14-cv-234-jdp

                              Defendants.

---

Pro se plaintiff Jon Soto brings this lawsuit against defendants David Gibbons and Kevin Ely, officers employed by the Trempealeau County Sheriff's Office, for their conduct in entering his home without a warrant in an attempt to arrest him. Officers awoke Jon's[1] mother, Donna Soto, after they entered the house, and the parties dispute whether the officers mistreated Donna in the process. Donna died two years later from heart-related problems.

Jon brings a Fourth Amendment claim for the officers' warrantless entry, and also brings a Wisconsin-law wrongful death claim for defendants' actions toward Donna. Defendants have filed a motion for summary judgment, contending that exigent circumstances gave them reason to make the warrantless entry into the house, that they did not mistreat Donna, and that her death was unrelated to the incident. I will grant summary judgment to defendants because the record shows that the officers had good reason to enter the house without a warrant, and because Jon fails to present evidence showing that the officers caused Donna's death.

---

[1] To avoid confusion I will generally refer to Jon and Donna Soto by their first names.

FACTS

I draw the following facts from the parties' proposed findings of fact and supporting evidence.[2]

Plaintiff Jon Soto is currently incarcerated at the Fox Lake Correctional Institution. At the time of the events in question here, he was living at the home of is mother, Donna Soto, in Blair, Wisconsin. Donna was 68 or 69 years old at the time of the events in question. Defendants David Gibbons and Kevin Ely are deputies with the Trempealeau County Sheriff's Department.

In the early morning of April 13, 2009, Tim Wheeler, the Blair chief of police, responded to a domestic disturbance report at a residence on Pearl Street in Blair. The victim told Wheeler that Jon (her former boyfriend) attacked her with a knife, stabbing her several times, including once in the neck, twice in the shoulder, and once in the abdomen. The victim said that after the attack, Jon told her that he was going to kill himself, and then fled heading east. Jon admits that the attack happened but that it was less serious than defendants portray it: he says that the victim required only one stitch for her injuries.

Trempealeau County deputies, including defendants, arrived at the scene. Wheeler searched the immediate neighborhood, looking for Jon, but did not find him. Wheeler then organized a search along with defendants to continue to search for Jon. At about 6 a.m., they arrived at the home of Donna Soto (Jon's mother) on Broadway Street. Wheeler knew that Jon was currently living there.

---

[2] Jon tries to dispute various facts proposed by defendants by stating that he has no way of knowing whether defendants' version is true. These facts will be deemed to be undisputed. Jon cannot dispute defendants' version of the facts unless he identifies a legitimate objection to defendants' evidence or he has admissible evidence that the events happened as he said.

The officers searched the perimeter of the house but did not see Jon. They saw two vehicles in the garage, which led them to believe that Donna was home. They also saw several drops of red liquid, which they believed to be blood, on the concrete near the back door, and a drop of the lower portion of the door. Jon says that this was red paint.

Wheeler knocked on the door several times, identified himself and officers Gibbons and Ely, and informed anyone inside the house that they were looking for Jon, but no one answered the door. They contacted dispatch and had dispatch call the house. Despite the knocking, yelling into the house, and phone call, Donna did not answer the door. Jon says that "Donna wore a hearing aid because she is deaf," but there is no indication that the officers knew this.

Given their belief that Donna was home, Jon's reported conduct, the possible drops of blood outside the house, and the failure of anyone to respond to the door, the officers believed that "the occupants" of the home might be in danger.[3] They entered through an unlocked door.

They say the following happened: they entered without guns drawn. Wheeler found Donna asleep in her bed, woke her up, and explained that they were looking for Jon. Donna told Wheeler she understood the situation and then gave the officers permission to search the house for Jon. The officers did not push or scream at Donna. After the officers finished searching the house, Wheeler showed Donna the dried red liquid on the porch and door. Donna explained that stains were likely blood stains left by her cat. The officers examined

---

[3] Medical notes state that Donna lived with her husband, but he is not otherwise mentioned by the parties.

the spots further and concluded that they appeared to be older than the events of that day. The officers continued their search. Jon was later arrested a few blocks away from the house.

Jon says that defendants' entry into the house unfolded quite differently. He states that Donna told him that she did not give them permission to search the house, that defendants pushed her onto the bed, and that she was "scared half to death" by the encounter. Soto provides statements from a neighbor and from Donna's sister stating that Donna told them similar things about the incident.

Donna did not have heart problems prior to the April 2009 incident. Medical notes show that Donna was diagnosed with atrial fibrillation in November 2009, and underwent numerous rounds of treatment for "persistent" fibrillation. Donna died in May 2011.

ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

**A. Fourth Amendment**

Jon brings a claim for violation of his own Fourth Amendment rights from defendants' entry into the Soto home. Defendants do not frame their arguments in terms of Jon's rights, as opposed to Donna's, even though Jon's claim on behalf of the estate was previously dismissed, *see* Dkt. 14, at 2-3. Many of their arguments would apply regardless whether it was Jon's or Donna's rights being evaluated. But some important issues are not equally applicable. For instance, it makes no difference to Jon's Fourth Amendment claim whether defendants pushed Donna, pointed their guns at her, or shouted at her. Donna might have had a claim based on those actions. But the question now is whether defendants violated *Jon's* rights by searching the house without a warrant.

Generally, warrantless entry into a person's home violates the Fourth Amendment, *see Payton v. New York*, 445 U.S. 573, 585 (1980), unless an exception to the warrant requirement applies. The exception claimed by defendants is that there were exigent circumstances justifying entry into the Soto home—they were concerned about Jon's and Donna's safety in the wake of Jon stabbing his ex-girlfriend.

A warrantless entry into a dwelling may be lawful when there is a pressing need for the police to enter but no time for them to secure a warrant. *See, e.g., Michigan v. Tyler*, 436 U.S. 499, 509 (1978); *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013). Exigent circumstances justify warrantless entry when, for example, law enforcement must rescue an individual from imminent danger, prevent a suspect from escaping, or prevent the destruction of evidence. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 557 (7th Cir. 2014) (citing cases); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant

or to protect an occupant from imminent injury."). Whether the exigent circumstances exception justifies warrantless action is judged by an objective standard: courts ask whether it was reasonable for the police officers on the scene to believe, in light of the circumstances they faced, that there was a compelling need to act and no time to obtain a warrant. *See Fitzgerald*, 707 F.3d at 730.

Defendants cite the following factors for their decision to enter the home:

- Jon's stabbing attack of the victim earlier that morning
- Jon's unknown whereabouts
- Jon's threat of suicide
- The early morning time of day and presence of two vehicles in the garage tended to show that Donna would have been home
- The presence of what appeared to be blood on and near the back door
- The failure the home's occupants to respond to the officers' attempt at contacting whoever was inside

There are three separate conclusions the officers drew from the circumstances: (1) Donna was in the house; (2) Jon was in the house; and (3) Jon or Donna were in danger. I will address each separately.

The undisputed facts show that the officers had good reason to think that Donna was in the house: they knew Donna lived there, it was the early morning, and there were two cars parked at the house.

The question whether it was reasonable to think that Jon was at the house is a somewhat closer call. The Soto house was no more than several blocks away from the site of the stabbing. When the officers showed up, they noticed drops of red liquid near and on the back door and thought they have been blood stains, which would tend to show that Jon had

6

returned home after the stabbing. It turns out that the stains were not blood from the incident. But the important question is what the officers knew at the time they decided to enter the home. Given that it was early morning and the officers were searching in haste for a stabbing suspect, and visibility was not ideal, the officers did not have the time to thoroughly inspect the scene. I conclude that, even assuming Jon's version of events is ultimately correct and the spots were really red paint, the circumstances reasonably gave the officers cause to think that Jon was likely inside.

The third question is whether it was reasonable to think that either Jon or Donna were in danger. The stabbing victim told Wheeler that Jon said he was going to kill himself,[4] which is sufficient to communicate the threat of danger regarding Jon himself. And once the officers could reasonably think that both Jon and Donna were in the house, the recent stabbing incident gave them good reason to fear for Donna's safety as well. Therefore, I conclude that defendants did not violate Jon's Fourth Amendment rights by entering the house without a warrant.

---

[4] There has been a considerable amount of hearsay offered as evidence in this case, which I will not consider because it is inadmissible. But this particular statement is admissible not for its truth, but to show the effect it had on the officers' decision to enter the house. *Cf. Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000) ("defendants offered the information conveyed to the police by Flores and memorialized in the misdemeanor complaint and arrest report not to show that Woods had actually performed the conduct as reported in those documents, but rather to show that they had probable cause to arrest Woods based upon the information communicated to them by Flores. The district court considered the statements strictly to determine the effect that they would have upon the arresting officers when communicated to them by a presumptively reliable citizen. Thus, the district court did not run afoul of the prohibition on hearsay by considering these documents for this limited purpose.")

Even if defendants had violated Jon's Fourth Amendment rights, they would be entitled to summary judgment on their qualified immunity defense.[5] Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In deciding whether a right is "clearly established," courts ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). A plaintiff bears the burden of establishing that the constitutional right was clearly established. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). Although the plaintiff need not point to a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2083 (2011). "In other words, 'the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right.'" *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015) (quoting *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005)).

I conclude that Jon fails to show a clearly established constitutional right violated by defendants here. Jon does not present a closely analogous case, and my own research suggests that the qualified immunity defense remains open to law enforcement officials in such close-call cases regarding potential danger to occupants of a home, particularly given Wisconsin cases taking an expansive view of the "community caretaker" doctrine. *See Sutterfield*, 751

---

[5] Defendants also argue that they are entitled to state-law discretionary immunity, but that immunity does not apply to federal claims.

F.3d at 572-76. ("Sutterfield contends that because Wisconsin precedent would not bind this court on the merits of her claims, and because in particular we, in contrast to the Wisconsin courts, have refused to extend the community caretaking doctrine to anything but automobile searches, the Wisconsin cases are irrelevant in terms of whether the defendants have qualified immunity. Not so."). In short, any violation by defendants was not clear enough to overcome the benefit of the doubt they receive under the qualified immunity doctrine. *See Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) ("Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties."); *see also Kikumura v. Turner*, 28 F.3d 592, 597 (7th Cir. 1994) ("[T]he point of qualified immunity and its 'clearly established' requirement is that government officials are not, as a rule, liable for damages in close cases."). Therefore, I will grant defendants' motion for summary judgment on Jon's Fourth Amendment claim.

**B. State-law wrongful death**

Jon also brings a wrongful death claim under Wisconsin law. I will retain jurisdiction over this claim because it clearly has no merit and it would be inefficient to leave it open for a later state court action. *See Korzen v. Local Union 705*, 75 F.3d 285, 288-89 (7th Cir. 1996) ("The normal practice of course is to relinquish jurisdiction over a supplemental claim when the main claim is dismissed before trial, but if the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody.").

A wrongful death claim is a statutory cause of action usually brought by the personal representative of the deceased person or family members for injuries suffered post-death. *Bartholomew v. Wisconsin Patients Comp. Fund & Compcare Health Servs. Ins. Corp.*, 2006 WI 91, ¶ 55, 293 Wis. 2d 38, 717 N.W.2d 216. "The purpose of the wrongful death statute . . . is to

9

allow plaintiffs to recover pecuniary injury, or to compensate for loss of the relational interest existing between the beneficiaries and the deceased." *Estate of Lamers v. Am. Hardware Mut. Ins. Co.*, 2008 WI App 165, ¶ 9, 314 Wis. 2d 731, 761 N.W.2d 38 (internal quotation omitted). Wisconsin Statute § 895.03 states:

> Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this state.

Unlike Jon's Fourth Amendment claim, in the wrongful death claim, defendants' treatment of Donna is relevant because the theory is that defendants' rough treatment of Donna contributed to her death. Defendants say that they did not threaten, yell at, or push Donna, they did not brandish their weapons while inside the house. Because the officers are testifying about their firsthand experiences, their testimony is admissible.

Jon was not present himself, so he cannot testify from his own firsthand knowledge of the events. Unfortunately for Jon, the only evidence he provides in support of his claim are hearsay statements made by Donna to him or to others about being mistreated by the officers. That is, they are out-of-court statements made by Donna that Jon wants to use to prove that the officers roughed her up. Those statements are not admissible evidence, and I cannot consider them at summary judgment because there is no realistic possibility that Jon could provide them in admissible form at trial. *See* Fed. R. Evid. 802 ("The Rule Against

Hearsay"); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").[6]

Without Donna's statements, the most that a reasonable jury could conclude happened during the search was that Donna had the same startled reaction anyone would have had upon being woken in her home by a police officer. In their brief, defendants say that "[a]ll of the Officers attest that Ms. Soto was not startled when she was awoken." Dkt. 44 at 15. But defendants' proposed findings and evidence do not actually explicitly say this, and quite frankly, such an assertion would be borderline preposterous.

Jon says that "it should be up to the jury to determine if . . . [Donna] was scared to the point that her heart [skipped] a beat and caused her death." Dkt. 58 at 4. But even allowing for Donna being surprised by the entry, no reasonable jury could conclude that the officers' actions contributed to her death. *See Schnabl v. Ford Motor Co.*, 54 Wis. 2d 345, 353-54, 195 N.W.2d 602, 607 (1972) ("'The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result.' It need not be the sole factor, the primary factor, only 'a substantial factor.'") (quoting *Kinsman v. Panek*, 40 Wis. 2d 408, 417, 162 N.W.2d 27, 31 (1968). None of the medical evidence that Jon provides suggests that Donna's heart problems were caused by the officers. She was diagnosed with atrial fibrillation about *seven months* after the incident, and she died more than

---

[6] Given the drawn-out nature of Donna's health problems and Jon's explanation of the statements she made to him and others, there is there no reason to believe that Donna's statements could fall any exception to the hearsay rule, such as Rule 804(b)(2)'s exception for "Statement[s] Under the Belief of Imminent Death" or 804(b)(6)'s exception for "Statement[s] Offered Against a Party That Wrongfully Caused the Declarant's Unavailability."

two years after the incident.[7] There simply is nothing in the record suggesting a connection between the incident and Donna's heart problems, other than Jon's belief that there is a connection. But this speculation is not enough to create a genuine issue of material fact for a jury to consider at trial.

Jon and the Soto family have suffered a serious loss. But this court considers only what can be *proven* by the litigants appearing before it. Because Jon fails to provide evidence that could lead a reasonable jury to find that defendants caused his mother's death, I will grant summary judgment on the wrongful death claim.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 43, is GRANTED.

2. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered March 15, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

---

[7] Jon does not actually provide any evidence showing that Donna's death was from heart-related causes. But given the medical evidence showing that she was suffering from heart problems, I will assume for purposes of this opinion that her death was related to her heart problems.